# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CAROLYN P. HALEY                                          CIVIL ACTION

VERSUS                                                   16-224-SDD-RLB

THE HOSPITAL SERVICE DISTRICT OF
WEST FELICIANA PARISH, LOUISIANA
AND THE BOARD OF COMMISSIONERS
OF THE HOSPITAL SERVICE DISTRICT
OF WEST FELICIANA

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendants, The Hospital Service District of West Feliciana Parish Louisiana and the

Board of Commissioners of the Hospital Service District of West Feliciana ("Defendants").

Plaintiff, Carolyn Haley ("Plaintiff" or "Haley"), filed an *Opposition*[2] to which Defendants

filed a *Reply,*[3] and Plaintiff filed a *Sur-Reply.*[4] Defendants also filed a *Sur-Reply.*[5] For the

following reasons, the motion will be granted in part and denied in part.

## I.       FACTUAL AND PROCEDURAL BACKGROUND[6]

Plaintiff, an African-American female, was hired in April of 2010 as a staff

registered nurse by the West Feliciana Parish Hospital ("Hospital").  Her starting salary

was $25 an hour and, by October of 2014, Plaintiff alleges she was paid $28.78 an hour.

Plaintiff worked as a registered nurse for over 34 years and holds two out of discipline

Masters' degrees.

---

[1] Rec. Doc. 32.
[2] Rec. Doc. 37.
[3] Rec. Doc. 45.
[4] Rec. Doc. 50.
[5] Rec. Doc. 53.
[6] The Court bases the factual background on Rec. Doc. 1.
Document Number: 45470

In June of 2013, Defendants hired a male Caucasian nurse who held a Bachelor's degree and had 10 years of experience, at a rate of $28 an hour, and he was later allegedly given a raise to $28.50 an hour within his first year of employment. Defendants also hired a female Caucasian nurse who was given a raise in her first year of employment, but Plaintiff alleges she "was told that she could not receive a raise within her first year of employment."[7]

Around December 9, 2013, Plaintiff expressed her interest in the positions of compliance officer, utilization review, infection control, and employee health nurse supervisor to Hospital CEO, Lee Chastant ("Chastant"). Chastant assigned one of the open positions to a Caucasian female who had a respiratory therapy background and allegedly less education and credentials than Plaintiff. Plaintiff protested the denial of her appointment arguing that the decision was racially motivated.

Plaintiff alleges that, at all times while employed at the Hospital, she was paid less than Caucasian employees of the Hospital despite having higher qualifications and more experience than her Caucasian counterparts. Plaintiff also claims that she was subjected to racial harassment consisting of, but not limited to: derogatory statements regarding African-Americans; comments that African-Americans "need to know their place;" placing Plaintiff as the head of housekeeping "because she can relate"[8] since all the employees in housekeeping are African-American; and Caucasian nurses refusing to treat African-American patients.

---

[7] Rec. Doc. 1, p. 2.
[8] *Id.* at pp. 3-4.
Document Number: 45470

On January 14, 2014, Plaintiff met with the former Director of Nursing at the Hospital, Kathleen Ford ("Ford"), to discuss her claim of pay discrimination. Ford allegedly told Plaintiff that, before each nurse was hired, the nurse met with Kevin Mulligan ("Mulligan"), the Human Resource Consultant at the Hospital, and each employee's salary was based on a formula derived from market rates in the area. Plaintiff allegedly requested on multiple occasions, but never received, information about this market rate formula.

On April 8, 2014, the nursing department had a meeting wherein Chastant stated that five positions would be posted for all interested employees per Hospital policy. Plaintiff emailed Defendants on May 28, 2014 regarding the positions discussed in the April 8, 2014 meeting because they had not been posted. Plaintiff also filed a written complaint of racial and age-based discriminatory pay and denial of promotions with Chastant on May 28, 2014. Plaintiff claims she repeatedly asked Defendants to address her complaints, which Defendants rejected. On June 3, 2014, Plaintiff filed another complaint with Defendants concerning the job opportunities posted that year for which Plaintiff claims she was qualified, which Defendants also rejected.

Plaintiff and Chastant met on July 2, 2014, and Plaintiff again alleged illegal discrimination and asked for salary information on Caucasian nurses. In this meeting, Chastant allegedly said that "promotions were made according 'to the landscape.'"[9] Plaintiff argues that this statement referred "to the races replacing other, *i.e.,* white with a white."[10] On November 24, 2014, Plaintiff discovered that a female Caucasian nurse was

---

[9] *Id.* at p. 5.
[10] *Id.*
Document Number: 45470

hired for a position which Plaintiff had applied for in September of 2014. According to Plaintiff, the nurse in question had far inferior qualifications, and Plaintiff filed a complaint with the Defendants objecting to the denial of her promotion to this position which she believes was racially motivated.

On August 12, 2014, a member of the Board met with Judy Jones ("Jones"), a nurse, and allegedly told Jones that promotions were not given to Plaintiff and others "because of race, and to file a written complaint with the Board, and make sure that press was there for the Board meeting."[11] Plaintiff and other African-American nurses presented their complaints of racism to the Board on August 21, 2014. At this meeting, Plaintiff, along with another African-American nurse, provided each member of the Board with emails and correspondence regarding their complaints of racism, "to no avail."[12] On September 17, 2014, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR").

Haley worked Thanksgiving weekend 2014, November 27-30.[13] Haley maintains that she was entitled to "emergent pay"[14] for working Thanksgiving weekend 2014 because she was not regularly scheduled to work.[15] Emergent pay is used by the Hospital "to compensate nurses called out at the last minute to fill a void in a shift."[16] As a result of her request for emergent pay, Haley alleges that Chastant began an audit of all

---

[11] *Id.*
[12] *Id.* at pp. 5-6.
[13] Rec. Doc. 43, p. 10.
[14] Plaintiff uses the term "emergent pay" and "call back pay" interchangeably. In the interest of clarity and consistency the Court will use the term "emergent pay" to refer to Haley's request for additional pay during Thanksgiving 2014.
[15] *Id.* at p. 9.
[16] Rec. Doc. 32-1, p. 5.
Document Number: 45470

employees who requested emergent pay.[17]  Plaintiff alleges that Janay Perkins ("Perkins"), the Hospital employee in charge of the audit, "failed to accurately investigate," and "the extent of Perkins' purported investigation was questioning Haley in a meeting, where she refused to disclose the contents of the complaint."[18]  Plaintiff further alleges that Perkins "failed to review any records, review Haley's normal schedule, and interview Jones, the interim Director of Nursing, who was in charge of formulating Haley's schedules and who had approved the pay for Haley."[19]

Chastant informed Haley on December 8, 2014, that Jones' interpretation of the emergent pay policy was incorrect and that she was not entitled to emergent pay.[20]  Plaintiff alleges that "Chastant confirmed that he and Jones had a simple disagreement about the interpretation of the policy and he refused to pay Haley the additional pay."[21]  On January 20, 2015, Plaintiff filed a formal complaint with the Department of Health and Hospitals ("DHH") alleging violations of Louisiana law stemming from staff shortages in the Hospital.  Chastant met with Haley on February 25, 2015, and he allegedly asked the Plaintiff to resign or be fired because of her request for emergent pay.[22]

On March 22, 2017, this Court issued a *Ruling* granting in part and denying in part the Defendants' *Motion to Dismiss* for failure to state a claim.[23]  In this *Ruling*, the Court dismissed Plaintiff's Louisiana state law claims for harassment and retaliation.[24]  The Defendants now move for summary judgment on Plaintiff's Title VII and state law

---

[17] Rec. Doc. 43-1, p. 9.
[18] *Id.* at p. 10.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] Rec. Doc. 23.
[24] *Id.* at p. 15.
Document Number: 45470

discrimination claims for failure to promote, disparate pay, hostile work environment, and retaliation.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[26]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[27]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[28]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[29]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[25] Fed. R. Civ. P. 56(a).
[26] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[27] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[28] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[29] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
Document Number: 45470

reasonable jury could return a verdict for the nonmoving party.'"[30]  All reasonable factual inferences are drawn in favor of the nonmoving party.[31]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[32]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[33]

### B.  Title VII Race Discrimination

#### 1.  Failure to Promote Burden of Proof

In order to survive Defendants' motion for summary judgment on her failure to promote claims, Haley must establish a *prima facie* case of discrimination by providing summary judgment evidence that she: "(1) is a member of a protected class; (2) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite [her] qualifications, [she] was rejected; and (4) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications."[34]  If Plaintiff meets her *prima facie* burden, the Defendants must "produce a legitimate, nondiscriminatory reason for the failure or refusal to [promote] the plaintiff."[35]  If the Defendants proffer a legitimate, nondiscriminatory reason for the failure

---

[30] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[31] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[32] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[33] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[34] *Sharkey v. Dixie Elec. Membership Corp.*, 262 Fed.Appx. 598, 602 (5th Cir. 2008).
[35] *Id.*

Document Number: 45470

or refusal to hire Plaintiff, Haley then "bears the ultimate burden of proving that the defendant's proffered legitimate nondiscriminatory reason is pretext for discrimination. To carry this burden, the plaintiff must rebut each nondiscriminatory reason articulated by the defendant."[36] Haley alleges that the Defendants failed to promote her to the positions of compliance officer, utilization review, infection control coordinator, and employee health nurse because she is an African-American.[37]

### a. Compliance Officer Position

In December 2013, Perkins, a Caucasian female, was named as the Director of Compliance for the Hospital.[38] Perkins became the Director of Compliance when Mary Morse ("Morse") ended her employment at the Hospital.[39] Plaintiff maintains that the appointment of Perkins to the compliance officer position over Plaintiff was discriminatory.

The Defendants move for summary judgment on the second prong, arguing namely that there is no summary judgment evidence that Plaintiff "applied" for the positions in question.[40] The Plaintiff maintains that she "orally applied for the position of Compliance Officer."[41] Plaintiff's cited deposition testimony does not support her assertion that she "orally applied for the position of compliance officer;"[42] rather, her deposition testimony states that she was "interested" in the position of compliance officer.[43] Exhibit 41 to Haley's deposition, which is also cited by Plaintiff, does not support

---

[36] *Id.*
[37] Rec. Doc. 43, p. 15.
[38] Rec. Doc. 32-5, pp. 8-9, ll. 21-24, l.1.
[39] Rec. Doc. 32-4, p. 21, ll. 24-25.
[40] Rec. Doc. 32-1, p. 15.
[41] Rec. Doc. 43, p. 16.
[42] Rec. Doc. 32-3, p. 55.
[43] *Id.*

Document Number: 45470

her position that she orally applied for the position.[44]  The email from the Interim Director of Nursing, Judy Jones ("Jones"), which forms the basis of Exhibit 41 states: "Many of you have been inquiring about the position of several interim/available positions.  Some of you have asked verbally and others via email."[45]  In an email to Chastant, Plaintiff states she was "very interested in several positions/job duties, but I have never been asked about any of them."[46]  While there is summary judgment evidence that Haley expressed interest in the compliance officer position, there is no summary judgment evidence that Haley applied for the position or that she expressed her intent to apply for the position.  Accordingly, the Court finds that Plaintiff has failed to demonstrate with summary judgment evidence that she applied for the position of compliance officer, and thus fails to establish this *prima facie* requirement for a Title VII failure to promote claim.[47]

Plaintiff argues in the alternative that it would have been "futile" for her to apply for the compliance officer position.[48]  Haley relies on the United States Supreme Court's decision in *International Board of Teamsters v. United States*[49] for her assertion that a "plaintiff's failure to apply for the position does not bar her claim if she can show that such an application would have been a futile gesture."[50]  Under controlling Fifth Circuit

---

[44] Rec. Doc. 32-3, p. 148.
[45] *Id.* at p. 149.
[46] *Id.*
[47] Plaintiff bases her argument for failure to promote upon a four part test outlined by the Supreme Court in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Given that the Fifth Circuit applies an updated four part test for failure to promote following the Supreme Court's 1981 decision in *Texas Dept. of Community Affairs*, and Plaintiff provides no argument why the Fifth Circuit's four part test should not apply in this case, the Court will apply the four part failure to promote test articulated by the Fifth Circuit in *Sharkey v. Dixie Elec. Membership Corp.*, 262 Fed.Appx. 598, 602 (5th Cir. 2008), and most recently in *Jenkins v. Louisiana Workforce Commission*, 713 Fed.Appx. 242, 244-45 (5th Cir. 2017).
[48] Rec. Doc. 43, pp. 16-17.
[49] 431 U.S. 324, 363-66 (1977).
[50] *Id.* at p. 17.

Document Number: 45470

jurisprudence, Haley must show "that the application for the promotion was deterred by a known and consistently enforced policy of discrimination."[51]  Plaintiff provides no evidence of a consistently enforced policy of discrimination; however, she maintains that she was not promoted to the position of compliance supervisor because "she was black."[52]

Plaintiff argues that these three alleged statements by Chastant demonstrate that it would have been futile for her to apply for the position: "1) confirm[ed] whites as opposed to black applicants were getting promotions because it was in keeping with the landscape; 2) confirm[ed] he was 'replacing white people with white people,' 3) command[ed] Haley to stay in her place."[53]  In a letter that was purportedly sent from Chastant to Haley, Chastant stated: "During the last year or so, we have had management departures (all white females – I point that out solely because your communications and that of others focus upon race, and less importantly, sex discrimination allegations) **which have changed the staffing landscape quite significantly**."[54]

Plaintiff interprets Chastant's words that management departures have "changed the staffing landscape" as an expression that white applicants would be promoted in preference to black applicants;[55] however, Plaintiff's own deposition testimony makes clear that it was her interpretation of Chastant's statement, and not the statement itself, which is offered as evidence of discriminatory intent.  Plaintiff was asked in her deposition: "You testified on questioning by your counsel that Lee Chastant said, 'We are staying with the landscape.' You said that Lee Chastant said, 'We were replacing white females with

---

[51] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999).
[52] Rec. Doc. 43, p. 1.
[53] *Id.* at p. 13.
[54] Rec. Doc. 32-3, p. 175 (emphasis added).
[55] Rec. Doc. 43, p. 13, n. 101, citing Rec. Doc. 37-3, pp. 96-100, 134-35.
Document Number: 45470

white females.'"[56]  Haley responded: "No.  That was my interpretation.  I asked him is that what it meant [].''[57]  When opposing counsel asked for Chastant's response, Plaintiff stated: "I'm not really sure.  He may have – I'm not sure.  I don't want to say yes or no.''[58]  Neither the plain language of Chastant's letter to Haley, or Plaintiff's own interpretation provide competent summary judgment evidence that Chastant stated that hiring decisions were being made in keeping with the landscape of replacing white people with white people.

Haley also alleges that Chastant told her to stay in her place.  When Plaintiff was asked if Chastant told her she "need to know [her] place," Haley responded, "Yes, quote, unquote.''[59]  Plaintiff offers the following as summary judgment evidence that Chastant told her that she needs to know her place.  In a letter, Chastant made the following statement:

> Suffice it to say, in deciding upon reassigning function or filling posted jobs, the only consideration is whom we believe is the best fit, without regard to race or sex.  In making these reassignments, you should not believe that we do not consider your qualifications for a particular task but, rather, that we believe another may be more qualified or that you may be more valuable where you presently are.[60]

Plaintiff asked Chastant during a meeting, "does that meant that I need to stay in my place?"[61]  According to Plaintiff, Chastant responded with "[r]ubbish, some sort of messed-up response.  He did not answer.  That is another question that he had the

---

[56] Rec. Doc. 32-3, p. 134, ll. 16-19.
[57] *Id.* ll. 20-21.
[58] *Id.* ll. 23-24.
[59] *Id.* ll. 19-22.
[60] *Id.* ll. 177-178.
[61] Rec. Doc. 32-3, p. 100, ll. 14-16.
Document Number: 45470

opportunity to answer, or clarify, that he did not."[62]  Defense Counsel asked Haley, "so the words 'needed to know their place,' or 'your place,' are your words interpreting something he said; is that correct?"[63]  Haley responded, "That's interpreting this sentence [the above quoted sentence from Chastant's letter]."[64]  Neither the plain language of Chastant's letter, nor Haley's own testimony, are summary judgment evidence that Chastant told her to "stay in her place."  Accordingly, the Court finds that Haley has not come forward with summary judgment evidence that her application for the compliance officer position was futile because she has not provided summary judgment evidence that "the application for the promotion was deterred by a known and consistently enforced policy of discrimination."[65]  Accordingly, the Defendants' motion for summary judgment on Plaintiff's failure to promote claim for the compliance officer position is GRANTED

### b.  Infection Control Coordinator Position

Plaintiff argues that the Defendants failed to promote her to the infection control coordinator position because she was an African-American.[66]  The infection control coordinator position became available on December 12, 2013, when Morse resigned.[67] According to Plaintiff, Cathy Ritchie ("Ritchie"), a white female, was appointed to the infection control coordinator position despite being unqualified for the position.[68]  As with Plaintiff's application for the compliance officer position, the record evidence does not support her contention that she orally applied for the infection control coordinator position

---

[62] *Id.* ll. 18-21.
[63] *Id.* ll. 22-24.
[64] *Id.* l. 25.
[65] Shackelford, 190 F.3d at 406.
[66] Rec. Doc. 43, p. 15.
[67] *Id.* at p. 5.
[68] *Id.*

Document Number: 45470

or that she submitted a formal application.[69]  Plaintiff relies on the same deposition evidence to support her argument for the infection control coordinator position as she did above for the compliance officer position.  Accordingly, the Court finds, for the above stated reasons, that Plaintiff has failed to provide summary judgment evidence that she orally applied for the compliance officer position.

Plaintiff argues, in the alternative, that her submission of the application for the infection control coordinator position would have been futile.  Once again Haley relies on the same record evidence and jurisprudence to support her futility argument for both the infection control coordinator position and the compliance officer position.[70]  For the same reasons stated reasons, the Court finds that Haley has not provided summary judgment evidence that her applications for the infection control coordinator position was futile given that she has provided no summary judgment evidence that "the application for the promotion was deterred by a known and consistently enforced policy of discrimination."[71]  Accordingly, the Defendants' motion for summary judgment on Plaintiff's failure to promote claim for the infection control position is GRANTED.

### c.  Employee Health Nurse Position

Plaintiff argues that the Defendants failed to promote her to the employee health nurse positions because she was an African-American.[72]  The employee health nurse position also became available on December 12, 2013, when Morse resigned.[73]  According to Plaintiff, Ritchie was also appointed to the employee health nurse position

---

[69] *See supra* ns. 42-50.
[70] *Id.*
[71] Shackelford, 190 F.3d at 406.
[72] Rec. Doc. 43, p. 15.
[73] Rec. Doc. 43, p. 5.
Document Number: 45470

despite being unqualified for the position.[74]  However, as demonstrated above, the record evidence does not support Plaintiff's contention that she orally applied for the employee health nurse position or that she submitted a formal application.[75]  Plaintiff relies on the same deposition evidence to support her argument for the employee health nurse position as she did above for the compliance officer position.  Accordingly, the Court finds, for the above stated reasons, that Plaintiff has failed to provide summary judgment evidence that she orally applied for the employee health nurse position.

Plaintiff also alternatively urges the same futility argument set forth above.  For the same reasons set forth above, the Court finds that Haley has not provided summary judgment evidence that her application for the employee health nurse position was futile given that she has provided no summary judgment evidence that "the application for the promotion was deterred by a known and consistently enforced policy of discrimination."[76]  Accordingly, the Defendants' motion for summary judgment on Plaintiff's failure to promote claim for the employee health nurse position is GRANTED.

### d.  Utilization Review Position

Haley also contends the Defendants failed to promote her to the position of utilization review because she is an African-American.[77]  The utilization review position became available on December 12, 2013, when Morse resigned.[78]    Christy Stone, a white female, was named to the utilization review position in June 2014,[79] but resigned

---

[74] *Id.*
[75] *See supra* ns. 18-26.
[76] *Shackelford*, 190 F.3d at 406.
[77] Rec. Doc. 43, p. 15.
[78] *Id.* at, p. 5.
[79] *Id.*

Document Number: 45470

three months later.[80]  Haley applied for the utilization review position on September 26, 2014, when the position again became available due to Stone's resignation.[81]  Angel Noble ("Noble"), a white female, was ultimately appointed to the utilization review position in Ocotober 2014.  Haley filed a formal grievance concerning Noble's appointment to the utilization review position on December 4, 2014.[82]

The Defendants do not challenge Plaintiff's *prima facie* case with respect to this position; rather, they aver that they have articulated legitimate, nondiscriminatory reasons for selecting Noble to the utilization review position.[83]

Under *McDonnell Douglas* burden shifting, the Defendants have the obligation to "produce a legitimate, nondiscriminatory reason for the failure or refusal to hire the plaintiff."[84]  The Defendants' said reason was that Noble "was the best-qualified candidate for the position."[85]  The Defendants rely on the Fifth Circuit's decisions in *Gregory v. Town of Verona, Mississippi*[86] and *Alvarado v. Texas Rangers*[87] for their position that "an employer's bare assertion that it chose the best qualified candidate meets the employer's burden on this step of the McDonnell Douglas framework."[88]

The Fifth Circuit in *Manning v. Chevron Chemical Co. LLC*.[89] examined whether an employer must state the specific reasons why a protected employee was not granted a promotion in order to satisfy the *McDonnell Douglas* burden shifting standard.  Like the

---

[80] Rec. Doc. 43, p. 6.
[81] Rec. Doc. 32-3, p. 179.
[82] *Id.* at p. 181.
[83] *See supra n. 35.*
[84] *Id.*
[85] Rec. Doc. 32-1, p. 18.
[86] 574 F. Appx. 525, 528 (5th Cir. 2014).
[87] 492 F.3d 605, 616 (5th Cir. 2007).
[88] Rec. Doc. 32-1, p. 18 (internal quotations omitted).
[89] 332 F.3d 874, 881 (5th Cir. 2003).
Document Number: 45470

present Defendants, the defendant in *Manning* argued that it selected the "best qualified" candidate for the disputed position.[90]   The plaintiff in *Manning*, like Haley, argued that "[the defendant] was required to explicitly state that it chose [the successful candidate] because they were more qualified than [plaintiff]."[91]   The *Manning* court disagreed with the plaintiff's argument and stated: "[defendant's] statement that it chose the 'best qualified' candidates clearly implies that it selected [the successful candidates] because they were better qualified than [plaintiff]."[92]   Because the Defendants in the case at bar have proffered the identical legitimate, nondiscriminatory reason for failing to promote Haley as offered by the defendant in *Manning*, the Court finds that Defendants have articulated a legitimate, nondiscriminatory reason for not promoting Haley to the utilization review position.   Under *McDonnell Douglas* burden shifting, Haley now "bears the ultimate burden of proving that the defendant's proffered legitimate nondiscriminatory reason is pretext for discrimination.   To carry this burden, the plaintiff must adduce summary judgment evidence that rebuts each nondiscriminatory reason articulated by the defendant."[93]

The Defendants offer seven non-discriminatory bases for hiring Noble for the utilization review position:[94]

1. Ms. Noble had shown a great interest in the position for same on two occasions: in June when Christy Stone was selected to fill the position and, following Christy Stone's departure, again in October.[95]
2. During the June attempt at filling the position, Ms. Noble had been the next

---

[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] Rec. Doc. 32-1, pp. 18-19.
[95] Rec. Doc. 32-4, pp. 18, 34.
Document Number: 45470

based ranked candidate for the position after Ms. Stone.[96]

3. During the June attempt at filling the position, Mr. Chastant had been "very impressed" with Ms. Noble and had concluded that she was very qualified for the position, and ranked her "very high" during the interview process.[97]

4. Ms. Noble had worked as Ms. Stone's back up and, as a result, had knowledge of and experience in the position.[98]

5. During Ms. Stone's notice period, Ms. Noble received training regarding the responsibilities entailed of the position.[99]

6. Ms. Noble "was familiar with all of the discharge plans at the hospitals, which is very important for th[e] job.[100]

7. Upon Ms. Stone announcing her departure, Mr. Chastant had assigned the utilization review job duties to Ms. Stone on an interim basis, which resulted in Ms. Noble gaining additional experience in and/or for the [*sic*] potion.[101]

Plaintiff argues that the above rationales are pretext for discrimination given that she was more qualified for the utilization review position that Noble.[102]  Haley's contention that she is more qualified is based on her higher education degree and decades of experience – which Noble herself acknowledged in her deposition.[103]  According to Plaintiff, relying on the Fifth Circuit's decision in *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*,[104] "an employers' alleged reasons are pretextual when defendant's employee admitted the plaintiff had more experience than his replacement[.]"[105]

In *Burrell*, Dr. Pepper, the defendant, hired a white male over an African-American male because the white male had more "purchasing experience in the bottling industry"[106] which allegedly made the white candidate "better" for the position.  The Fifth Circuit in

---

[96] *Id.* at pp. 16, 18.
[97] *Id.* at pp. 18, 33.
[98] *Id.* at pp. 16, 34.
[99] *Id.* at pp. 16-17.
[100] *Id.* at pp. 34-35.
[101] *Id.* at pp. 17, 35, 39.
[102] Rec. Doc. 43, p. 6.
[103] Rec. Doc. 37-4, pp. 42-43.
[104] 482 F.3d 408, 411-16 (5th Cir. 2007).
[105] Rec. Doc. 43, p. 17.
[106] *Burrell*, 482 F.3d at 412.
Document Number: 45470

*Burrell*, stated that the plaintiff had:

> two methods available to him to try to prove that Dr. Pepper's proffered reason for failing to promote him was a pretext for racial discrimination: (1) Burrell could show that Dr. Pepper's proffered explanation is false or 'unworthy of credence;' or (2) Burrell could try to prove that he is 'clearly better qualified' than the person selected for the position.'[107]

The plaintiff in *Burrell* presented the following deposition testimony of his employer referencing the plaintiff's:

> [] strong background in purchasing and [the white male's] relatively weak background, along with his exemplary performance of the Vice President of Purchasing duties during [white male employee's] initial months of employment, supports the conclusion that Dr. Pepper did not seek someone with more 'purchasing experience in the bottling industry.'[108]

Dr. Pepper countered by stating that the African-American male's purchasing experience during the initial months of the white male's employment was merely "functionary."[109] Dr. Pepper also argued that the white employee's thirteen years of experience and his two years of management were valuable experience for the position to which he was ultimately appointed.[110] After examining the record, the *Burrell* court found that the plaintiff had presented summary judgment evidence that Dr. Pepper's proffered nondiscriminatory reason for failure to promote was pretext.[111] The *Burrell* court focused on the white employee's own deposition testimony that his experience "did not necessarily qualify him"[112] to handle his position at Dr. Pepper, and the deposition of the Dr. Pepper

---

[107] *Id.*
[108] *Id.* at 413.
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.*

Document Number: 45470

supervisor who admitted that plaintiff "had more relevant experience"[113] than the white male who was promoted.

In the present case, Noble stated that Haley was more qualified for the utilization review positon based upon her "years of experience"[114] and her Master's degrees.[115] Chastant stated that Noble was selected over Haley because Noble filed an application for the position when it originally became available in June 2014.[116] Chastant also stated that Noble was selected because she had served as a "backup" to the previous employee who held the utilization review position.[117] Plaintiff argues that Stone's original appointment to the utilization review position in June 2014 was against hospital policy because the position was not posted.[118] Chastant admitted in his deposition that Noble's appointment to the position in June 2014, which constitutes an alleged violation of the West Feliciana Hospital policy because the position was not posted, gave her "experience with the position" which "was a plus."[119]

Because the alleged experience which gave Noble an advantage in the application process for this position was the result of an admitted violation of hospital policy, and Noble's testimony that Haley had more experience, the Court finds that Plaintiff has presented summary judgment evidence demonstrating a material issue of fact as to whether the Defendants' alleged reasons for promoting Noble are pretext for racial discrimination. Accordingly, the Defendants' motion for summary judgment on Plaintiff's

---

[113] *Id.* at 414.
[114] Rec. Doc. 37-4, p. 42, ll. 21-25, p. 43, ll. 1-2.
[115] *Id.* at ll. 3-5.
[116] *Id.* at p. 38, ll. 7-10.
[117] *Id.* at p. 16, ll. 11-14.
[118] Rec. Doc. 43, p. 5.
[119] Rec. Doc. 32-4, p. 34, ll. 17-19.
Document Number: 45470

failure to promote to the utilization review position is DENIED.

### 3. Disparate Pay

To establish her *prima facie* case for disparate pay, Plaintiff must establish that: "(1) she is a member of a protected class, and (2) that she is paid less than a nonmember for work requiring substantially the same responsibility."[120] It is undisputed that Haley is a member of a protected class. Plaintiff argues that she was paid less than two white registered nurses, Shannon White ("White") and Joseph Williams ("Williams").[121]

Before White was hired as a full time registered nurse by West Feliciana, she worked as a pre-registered nurse ("PRN") at a higher rate of pay because she did not receive benefits from West Feliciana.[122] Haley concedes the practice of paying PRNs a higher salary rate than registered nurses because of different benefits.[123] When White moved from a PRN to a full time registered nurse, she was paid a starting salary of $23 an hour,[124] while Haley was paid a starting salary of $25 an hour[125] – a fact which the Plaintiff admitted in her deposition.[126] Regardless of the difference in starting salaries, Haley's salary during the entire term of her employment with the Hospital was less than White's.[127]

Defendants argue that Haley cannot meet her *prima facie* burden because she cannot demonstrate that her circumstances are "nearly identical to those of Ms. White."[128]

---

[120] *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).
[121] Rec. Doc. 43, p. 20.
[122] Rec. Doc. 32-3, p. 35, ll. 11-13.
[123] *Id.* at ll. 14-18. *See also*, Rec. Doc. 32-3, p. 160.
[124] *Id.* at p. 160.
[125] *Id.* at p. 141.
[126] *Id.*at p. 36, ll. 1-4. *See also*, Rec. Doc. 32-3, p. 160.
[127] *Id.*at pp. 141 and 160.
[128] Rec. Doc. 45, p. 3.
Document Number: 45470

Haley argues that she and White were doing work that required substantially the same responsibilities in that both worked as registered nurses.[129]  Haley offers summary judgment evidence of payroll records demonstrating that she and White were performing substantially the same job duties with different salary and wage histories.[130]  The Defendants offer no evidence to the contrary.[131]  Accordingly, the Court finds that the Plaintiff has met her *prima facie* burden for a disparate pay claim.

Under *McDonnell Douglas*, the Defendants must provide a "legitimate nondiscriminatory reason for a pay disparity [.]"[132]  The Defendants' given reason for the pay disparity is White's longer employment with the Hospital and various other factors outlined by Chastant in his deposition.[133]  Chastant stated in his evaluations that nurses' pay was dependent upon their evaluations and the market rate.[134]  Chastant stated that the market data he consulted is "based on regions, job descriptions, hospital."[135]  Chastant further testified that one of the "components we're looking at was not length of service or level of education unless it was specific to your particular job, for example, RN versus LPN.  We didn't differentiate whether it was master's RN or not a master's RN.  There's not a differentiation."[136]  Chastant stated that all staff nurses should be paid "in a range within market."[137]

The Defendants rely on the Fifth Circuit's decision in *Ross v. University of Texas*

---

[129] Rec. Doc. 43, p. 20.
[130] Rec. Doc. 32-3, pp. 141 and 160.
[131] *See Uviedo v. Steve's Sash & Door Co.*, 738 F.2d 1425, 1431-32 (5th Cir. 1984).
[132] *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).
[133] Rec. Doc. 45, p. 3.
[134] Rec. Doc. 32-4, p. 77, ll. 1-3.
[135] Rec. Doc. 32-4, p. 77, ll. 10-12.
[136] Rec. Doc. 32-4, p. 77, ll. 19-25.
[137] Rec. Doc. 32-4, p. 78, ll. 19.
Document Number: 45470

*at San Antonio*[138] as jurisprudential support for their position that using market data and performance evaluations is a legitimate, nondiscriminatory reason for the pay disparity in the present case. While the Fifth Circuit did find that using market demand and data was a legitimate, nondiscriminatory reason for disparate pay, the defendants in *Ross* provided deposition testimony, market data, and evaluation ratings for each of the disputed pay positions.[139] Here, Defendants rely solely on the deposition testimony of Chastant and the hospital medical director as their summary judgment evidence that they relied on market rates and performance evaluations to set staff nurse pay.[140] In *Mengistu v. Mississippi Valley State University*,[141] a case also cited by the Defendants, the university articulated specific aspects of the successful applicants' resumés that formed the basis of their decision, and market demand statistics, which resulted in the successful applicant receiving higher pay.[142]

Here, Defendants merely refer to, but do not provide actual evidence of, market rates which the hospital human resources director allegedly used in formulating salaries for registered nurses. While Fifth Circuit jurisprudence clearly holds that setting salary based upon market conditions is a legitimate, nondiscriminatory basis for setting a salary, in cases where the Fifth Circuit has accepted such evidence, the employer has provided more than deposition testimony that the employer relied on market rates and demand. Because the Defendants have not provided similar, specific summary judgment evidence of the alleged market rates utilized in this process, the Court finds that there is a genuine

---

[138] 139 F.3d 521, 526 (5th Cir. 1998
[139] *Id.*
[140] *See* Rec. Doc. 45, p. 4, ns. 14-18.
[141] 16-cv-65, 2017 WL 3880319 at *3 (N.D. Miss. Sep. 5, 2017).
[142] *Id.* at *3-4.
Document Number: 45470

issue of material fact as to whether Defendants have provided a legitimate, nondiscriminatory basis for paying Haley a lower salary than White.[143]  Accordingly, the Defendants' motion for summary judgment on Haley's disparate pay claim is DENIED.[144]

### 4. Hostile Work Environment

Plaintiff alleges that she was subjected to harassment under Title VII because the Defendants created a hostile work environment during her employment.  According to Fifth Circuit jurisprudence, the Plaintiff must offer summary judgment evidence of the following five elements to meet her *prima facie* burden for a hostile work environment claim:

> (1) The employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[145]

The Fifth Circuit in *Ramsey v. Henderson*[146] stated:  "For a harassment on the basis of race to affect a term, condition, or privilege or employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[147]  Further, "[i]n determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of

---

[143] Given that White, one of Haley's comparators, made money during the disputed time, the Court need not analyze Haley's other comparator, as her *prima facie* case has been established.
[144] The Court declines to make a finding on Plaintiff's alleged claims for disparate hiring pay and disparate pay regarding raises because Haley did not oppose either argument.
[145] *Brew v. Weyerhaeuser NR Co.*, 537 Fed.Appx. 309, 313 (5th Cir. 2013).
[146] 286 F.3d 264, 268 (5th Cir. 2002)(citations omitted).
[147] *Id.*

Document Number: 45470

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[148]

The Defendants argue that Plaintiff has failed to meet her *prima facie* burden as to the second prong because she offers no evidence that the "alleged comments referenced in her Complaint were heard first hand or directed at her."[149]

Plaintiff has alleged that she heard from a co-worker that Dr. Shields, the Medical Director of the Hospital, ("Shields") "refer[red] to an obese black patient by saying, 'I didn't go to school to be a veterinarian[,]'"[150] and refer[red] to a black child as "Let's get this little MFer out of here."[151] However, Plaintiff admitted in her deposition that she did not directly hear Shields make either statement. Plaintiff also learned that Chastant allegedly told Jones "that she needed to be in housekeeping because she could relate,"[152] but Plaintiff admitted that she did not directly hear this alleged statement either. Further, as set forth above, the Court has found that there is no summary judgment evidence supporting Plaintiff's claim that Chastant told Haley that she needed to "know her place," or that hiring decisions were made in accordance with an alleged white racial landscape.[153] In short, there is no competent summary judgment evidence that Plaintiff was subjected to or actually overheard racially disparaging comments firsthand. Plaintiff argues that, "under the law, it is the totality of the circumstances, not any single event, which gives rise to

---

[148] *Id.*
[149] Rec. Doc. 32-1, p. 26.
[150] Rec. Doc. 32-3, p. 96, ll. 17-20.
[151] Rec. Doc. 32-3, p. 96, ll. 21-23.
[152] Rec. Doc. 32-3, p. 101, ll. 4-7.
[153] *See supra* ns. 31-43.
Document Number: 45470

liability for racial harassment;"[154] however, Plaintiff cites no jurisprudence in support of this assertion.

Further, Haley fails to counter Defendants' assertion that she cannot meet her *prima facie* case because none of the alleged racially charged comments were directed to Haley. The Defendants rely on the Fifth Circuit's decision in *Celestine v. Petroloeos de Venezuela SA*.[155] for their argument that Haley must establish harassing acts directed towards her, not towards other African-American employees. In *Celestine*, the plaintiff relied upon the racial harassment claims heard by others to support his hostile work environment claim.[156] The Fifth Circuit classified the racial harassment heard by other employees as "hearsay; things that other employees told him[.]"[157] The Fifth Circuit upheld the district court's dismissal of the plaintiff's hostile work environment claims in *Celestine* because the "[plaintiff] established *no* act adverse *to him* [], he could not establish a hostile work environment claim."[158] Applying the standard articulated in *Celestine*, it is clear that Haley cannot rely on the allegedly racist actions and comments, of which she has no personal knowledge and that were not directed to or overheard by Haley, to meet her hostile work environment *prima facie* burden. Accordingly, the Court finds that the alleged comments and statements made by Chastant and Shields may not serve as *prima facie* evidence of Haley's hostile work environment claim.

With regard to the comments allegedly made by Ford and Ritchie, both supervising nurses, there is no record evidence that Ford made any alleged racially harassing

---

[154] Rec. Doc. 43, p. 22.
[155] 108 Fed.Appx. 180, 187-188 (5th Cir. 2004).
[156] *Id.*
[157] *Id.* at p. 187.
[158] *Id.* at p. 188.
Document Number: 45470

comments. Haley alleges that Ritchie refused to treat an African-American patient with cellulitis.[159] According to Haley, Ritchie never refused to treat a white patient or refused to go into a white patient's room.[160] Haley stated in her deposition that Ritchie did not want to go into the African-American patient's room because "she thought she could catch something and take it home to her kid."[161] According to Haley, Ritchie was a "new-graduate" who failed to treat a person with cellulitis, "which is basically their leg is inflamed and red" because "she thought she could catch something and take it home to her kid. That's the person that he put over infection control."[162] Haley's deposition testimony indicates her belief that Ritchie's reluctance to treat the patient with cellulitis was from an alleged lack of knowledge regarding the contagious effect of cellulitis, which Haley believes makes her unsuitable for the infection control position. There is no record evidence that Ritchie ever refused to treat the African-American patient because of his race or that she ever called an African-American patient a derogatory name.

Assuming a *arguendo* that Ritchie's one-time failure to treat an African-American patient was racially discriminatory, Haley provides no summary judgment evidence that Ritchie's alleged conduct was "so severe or pervasive that it created a work environment abusive [to her]."[163] Therefore, Plaintiff has failed to satisfy the second prong of her *prima facie* case for hostile work environment, and Defendants' motion for summary judgment on this claim is GRANTED.

---

[159] Rec. Doc. 32-3, p. 101, ll.8-17.
[160] Rec. Doc. 32-3, p. 101, ll. 20-25, p. 102, ll. 1-5.
[161] Rec. Doc. 37-2, p. 14, ll. 11-18.
[162] *Id.*
[163] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 371 (1993).
Document Number: 45470

### 5. Retaliation

The Defendants argue that Plaintiff has not provided summary judgment evidence of her unlawful retaliation claim. To meet her *prima facie* burden, Haley must show that: "(1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[164] Haley satisfied the first prong of her *prima facie* burden when she filed her EEOC intake questionnaire on September 17, 2014,[165] because the intake questionnaire serves as the initial step in a Title VII investigation from the EEOC.[166] Haley's termination on February 25, 2014[167] clearly qualifies as an adverse employment action because it "affect[ed] the terms and conditions of [her] employment."[168] Haley argues that she meets the third *prima facie* element because "there is a temporal proximity between all of Haley's protected activity and all of Defendants' adverse actions."[169]

Haley relies on the Fifth Circuit's decision in *Shackelford v. Deloitte & Touche, LLP*.[170] in support of her temporal proximity argument. According to Plaintiff, as long as there is a Title VII protected activity and an adverse employment action taken within four months, "a causal connection can be established."[171] However, Haley's argument is

---

[164] *Stewart v. BrownGreer, P.L.C.*, 655 Fed.Appx. 1029, 1031 (5th Cir. 2016).
[165] Rec. Doc. 17-1, pp. 3-7.
[166] "Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation proceeding, or hearing.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 2411 (2006).
[167] Rec. Doc. 43, p. 10.
[168] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. at 64.
[169] Rec. Doc. 43, p. 26.
[170] 190 F.3d 398, 401 (5th Cir. 1999).
[171] Rec. Doc. 43, p. 26, n. 179.
Document Number: 45470

contrary to the Fifth Circuit's more recent Title VII retaliation decision in *Strong v. University Health Care LLC.* where the court held: "We affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation. Such a rule would unnecessarily tie the hands of employers."[172] Like the plaintiff in *Strong*,[173] Haley presented no summary judgment evidence that she was terminated because of her EEOC complaint. Yet, unlike the plaintiff in *Strong*, Haley argues that Defendants' stated reason for her termination, violation of the emergent pay policy, is untrue. Given that Haley asserts both a temporal proximity argument and evidence that the Defendants' proffered reason for termination could be pretext for discrimination, the Court finds that Haley has satisfied the third element of her *prima facie* burden for her retaliation claim.

Under *McDonnell-Douglas* burden shifting, the Defendants must demonstrate that they had a legitimate, non-retaliatory purpose for terminating her employment.[174] Chastant stated that Haley was terminated for violating West Feliciana Parish Hospital Policy 200.0.082 when she has requested emergency pay for shifts that she was already scheduled to work.[175] Because the Defendants have proffered a legitimate, non-retaliatory purpose for terminating her employment, the burden shifts back to Haley to offer evidence that the Defendants' proffered reason is merely pretext for retaliation.[176]

As evidence of pretext, Haley submits that two white nurses, who were also investigated for misuse of emergency pay, were not terminated for an identical alleged

---

[172] *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).
[173] *Id.* at 808-09.
[174] *Id.* at 805.
[175] Rec. Doc. 32-3, p. 196.
[176] *Strong v. University Healthcare System, L.L.C.*, 482 F.3d at 808.
Document Number: 45470

violation – a fact which Chastant admitted in his deposition.[177]    Because Haley has provided summary judgment evidence that white employees who violated this same policy were not terminated, the Court finds that Haley has satisfied her burden of demonstrating a material issue of fact whether the Defendants' proffered reason for her termination is a pretext for discrimination.    Accordingly, the Defendants' motion for summary judgment on Plaintiff's retaliation claim is hereby DENIED.

### C. Louisiana State Law Claims

The Defendants argue that Plaintiff's state law LEDL claims should be analyzed under the federal Title VII framework.  Plaintiff offers no argument to the contrary.  The Louisiana Fourth Circuit in *Plummer v. Marriott Corporation* noted that, "because the Louisiana statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana court have routinely looked to the federal jurisprudence for guidance in determining whether a claim has been asserted."[178]  The Fifth Circuit recognized this practice in *Smith v. AT&T Solutions, Inc.* stating, "Louisiana courts have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes."[179]   Given that both Louisiana appellate courts and the Fifth Circuit have all recognized that the federal Title VII framework may be used to analyze a Louisiana state law claim of discrimination and retaliation, the Court's Title VII reasoning and analysis set forth above applied equally to Plaintiff's state law claims of discrimination and retaliation.

Accordingly, the Defendants' motion for summary judgment on Plaintiff's state law

---

[177] Rec. Doc. 37-3, pp. 47-51.
[178] 94-2025, p. 6-7 (La.App. 4 Cir. 4/26/95); 654 So.2d 843, 848.
[179] 90 Fed.Appx. 718, 723 (5th Cir. 2004).
Document Number: 45470

discrimination claims for failure to promote to the compliance officer, infection control coordinator, and employee health nurse positions is granted, and denied as to the utilization review position.  Defendants' motion for summary judgment on Plaintiff's state law disparate pay and retaliation claims are denied.  Defendants' motion for summary judgment on Plaintiff's state law hostile work environment claim is granted.

## III.    CONCLUSION

For the reasons stated above, the Defendants' *Motion for Summary Judgment* on Plaintiff's failure to promote for the compliance officer, infection control coordinator, and employee health nurse position is GRANTED.[180]  Defendants' *Motion for Summary Judgment* on Plaintiff's failure to promote for the utilization review position is DENIED. Defendants' *Motion for Summary Judgment* on Plaintiff's disparate pay claim is DENIED. Defendants' *Motion for Summary Judgment* on Plaintiff's hostile work environment claim is GRANTED, and Defendants' *Motion for Summary Judgment* on Plaintiff's retaliation claim is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 30th day of May, 2018.

_____
**SHELLY D. DICK, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[180] Rec. Doc. 32.
Document Number: 45470